```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
JOHN GLADSKY d/b/a GLADSKY
MARINE,

                    Plaintiff,
                                                          **MEMORANDUM & ORDER**
        -against-                                         16-CV-2365 (DRH)(AYS)

FRANK SCOBBO CONTRACTORS, INC.,
SCOBBO FOUNDATION SYSTEMS,
A DIVISION OF FRANK SCOBBO
CONTRACTORS, INC., FRANK, d/b/a
SCOBBO CONTRACTORS, INC. and
FRANK SCOBBO,

                    Defendants.
----------------------------------------------------X
```

**APPEARANCES:**

**For Plaintiff:**
Law Office of Vincent D. McNamara
Tower Square - 1045 Oyster Bay Road
East Norwich, New York 11732
By:    Helen M. Benzie, Esq.

**For Defendants:**
Law Office of Brian Thomas McCarthy, PLLC
68 South Service Road, Suite 100
Melville, New York 11747

**HURLEY, Senior District Judge:**

      Plaintiff John Gladsky d/b/a Gladsky Marine ("Plaintiff" or "Gladsky") commenced this

action against Frank Scobbo Contractors, Inc. ("Contractors"), Scobbo Foundation Systems, a

Division of Frank Scobbo Contractors, Inc. ("Systems"), Frank Scobbo d/b/a Scobbo

Contractors, Inc. ("DBA"), and Frank Scobbo ("Scobbo") (collectively "Defendants")[1] asserting claims of breach of an oral maritime contract, breach of a maritime bailment, unjust enrichment, breach of an obligation to buy hull and machine insurance, and fraud and misrepresentation. Presently before the Court, is Defendants' motion to dismiss the Amended Complaint ("AC"). For the reasons set forth below, that motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the amended complaint ("AC") and are presumed true for purposes of this motion.

Plaintiff owns the barge "Night Moves 11547" (the "Barge") and the assets of Seacoast Marine Services ("Seacoast"). Defendants are engaged in the construction of land and waterside facilities. (AC ¶¶ 3-9.)

In July 2013, Contractors, Systems, DBA, and Scobbo (on behalf of himself as well as on behalf of the foregoing entities), and Plaintiff entered into oral maritime agreements (the "Agreements") whereby Plaintiff chartered the Barge to Defendants. (AC ¶¶ 11-14.) Pursuant to the Agreements, Defendants were responsible (1) for "any and all damages to the barge while it was in [their] care, custody, control and use;" (2) to make payments of $4,000 per month of charter, and (3) insure the Barge and Plaintiff against "all liabilities with a limit of $1 [million] per accident or occurrence and [for] physical damage to the Barge up to the amount of $200,000" during the period of the charter; and (4) to return the Barge in good condition. (*Id.* ¶¶ 11-15.)

---

[1] Unlike the Court, Plaintiff does not use defined terms in its amended complaint. Accordingly, henceforth when the Court references an individual or entity using quotation marks (e.g. "Scobbo," or "Scobbo Defendants"), it is quoting directly from the amended complaint as distinct from using the terms as defined above.

Defendants had sole use, custody and control of the Barge beginning on July 12, 2013. "Scobbo" provided a "marine protection and indemnity and hull and machinery insurance certificate[] dated July 12, 2103 listing [Contractors] as primary insured and Seacoast Marine Service, Inc. and [the Barge] as additional insured[s] and loss payee[s] entitled to notice of cancellation." (AC ¶¶ 17, 19.) The July 12, 2013 certificate of insurance named the Folan Agency, Ltd. as its producer and indicated that coverage ended on August 14, 2014. (*Id*. ¶ 19; *id*. at Ex. A.) Thereafter, Defendants provided a second certificate of liability insurance dated June 15, 2015 with Kearney International, Inc. as its producer, Contractors as the insured and Seacoast as the certificate holder. The second certificate indicated a "Commercial General Liability, Protection & Indemnity, Collision & Towers Liability" insurance and "Hull & Machinery, etc." insurance both with effective dates of 2/10/2015 to 2/10/2016. (*Id*. at Ex. A.) It is alleged that no entity entitled Contractors exists in the records of the New York State Department. (*Id*. ¶¶ 20-21.) "Scobbo paid the monthly charter hire from July 2013 through September 2015 under the Agreement to Gladsky." (*Id*. ¶ 23.)

On or about May 15, 2015, the Barge was being used by "Scobbo" at a dock construction project abutting 80 Bayport Lane, Saddle Rock, New York. The Barge had an excavator on its deck but "Scobbo used no mats to protect the deck of the barge from compression and scoring by the steel treads of the excavator." (*Id*. ¶¶ 25-28.) As the tide was going out of the bay that afternoon, "the barge began to list severely to the west and the excavator began to slide." (*Id*. ¶ 29.) "Scobbo was alerted to the condition of the barge which was hanging on a broken pile as the tide was receding," but "no one came that evening. By the next morning as the tide was going out again, the barge again listed and began to submerge as if it took on water." (*Id*. ¶¶ 30-31.)

3

"[S]everal hours afterward a group of people came via water, began to pump water out of the belly of the barge and moved the excavator to the high point of the listing barge and secured it." (*Id*. ¶ 32.) This continued through several tide cycles. The group brought a crew to repair a breach in the bottom of the barge and when the tide was high enough, the barge was dislodged from the broken pile and repairs commenced. The barge was later towed out of the bay. (*Id*. ¶¶ 32-33.) "Scobbo informed Gladsky the barge was under control, continued to use the [Barge] and continued to pay the charter hire through September 2015." (*Id*. ¶ 34.)

"Scobbo" returned the Barge in late October 2015. Gladsky found it was "leaking due to indentations in the bottom hull plates, with slipshod cement repairs to the hull interior, damage to the deck plates and internal supports to the deck. On removal, the mooring spuds were bent." The damage rendered the Barge unusable. (*Id*. ¶¶ 35-36.)

Plaintiff submitted a notice of claim to defendants and the underwriters for the hull damage. The underwriters "declined coverage under the hull and machinery policy claiming that the barge was not insured under the policy until the June 15, 2015 certificate was issued and the Scobbo defendants insured had acknowledged the incident happened before the barge was listed on the policy." (*Id*. ¶¶ 37-39.)

## DISCUSSION

### I. Standard - Motion to Dismiss

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to

5

facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)); *see Weiss v. Village of Sag Harbor*, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (in deciding a motion to dismiss a court is entitled to consider, inter alia, "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint"). A document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted). Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.; see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (integral documents may include documents partially quoted in complaint or on which plaintiff relied in drafting complaint).

## II. The Parties' Contentions

In support of their motion to dismiss, Defendants argue the following: (1) Plaintiff lacks standing to sue as the contracting party was Seacoast, a defunct corporation, who is not a party to this action; (2) the amended complaint fails to set forth a basis to hold Scobbo individually liable and does not specify which acts are attributable to each defendant; (3) the claims for breach of maritime bailment, unjust enrichment, breach of the obligation to provide insurance, and fraud are duplicative of the claim for breach of a maritime contract and must be dismissed. (Defs.'

6

Mem. at 3, 7, 11.)

Plaintiff's response is that (1) Gladsky is the owner of the barge and therefore is the proper plaintiff; (2) Scobbo negotiated the charter of the Barge, had exclusive custody and control of it and discovery is needed to narrow the defendants in the case; and (3) the alternative causes of action are properly alleged. (Pl.'s Mem. in Opp. at ii.)

### III. Plaintiff's Standing

Defendants' standing argument is premised on Plaintiff's statement that he is no longer doing business as Gladsky Marine and Seacoast, together with the Certificates of Insurance and invoices for the charter of the Barge attached to the amended complaint which documents list Seacoast as the certificate holder and the issuer of the invoices, respectively. It is argued that this evidence "refutes [that] any alleged contract existed between some parties. Instead it is clear that the contracting party was Seacoast Marine Services, Inc. and not [Gladsky]." (Def.'s Mem. at 5.) The amended complaint alleges that Gladsky "owns the Barge" and "owns the assets of Seacoast" and that he, Gladsky, entered into an agreement to charter the Barge to the Defendants. (AC ¶¶ 4,5, 11-16.) There are any number of explanation as to why Seacoast issued the invoices. For example, Gladsky could have delegated that task to Seacoast as his agent. Alternatively, the allegations also permit the inference that Gladsky assumed or was assigned the contract when he became owner of the assets of Seacoast. While Defendants may wish to pursue the issue of standing during discovery, the allegations in the complaint are sufficient at this juncture to support Gladsky's standing to bring the breach of contract claim.[2]

---

[2] Defendants' standing argument does not address the other asserted causes of action and thus neither will the Court.

The motion to dismiss for lack of standing is denied.

IV. **The Claims against Scobbo**

Defendants proffer two arguments in support of dismissal of the claims against Scobbo. First, there are insufficient facts alleged to pierce the corporate veil. Second, as a disclosed principal, he is not liable. (Def.'s Mem at 7-11.)

Pleading in the alternative, it is alleged that Scobbo contracted with Plaintiff "on behalf of himself" as well as on behalf of the other named defendants. If Scobbo entered into the alleged contract on behalf of the other defendants he could be a disclosed principal and therefore not liable. *See Mencher v. Weiss*, 306 N.Y. 1, 4 (1953). However, it is also alleged that Scobbo contracted on his own behalf and therefore he is a proper defendant.[3]

Defendant is correct that to the extent Plaintiff seeks to hold Scobbo liable by piercing the corporate veil, such a claim is not sufficiently pled. "To pierce the corporate veil under New York law, a plaintiff must prove that: (1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used that control to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff." *Babitt v. Vebeliunas*, 332 F.3d 85, 91-92 (2d Cir. 2003). The test is conjunctive and requires a showing of both domination and fraud or wrong to justify the piercing of a corporate veil. *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 n.2 (2d Cir. 1997). "Being a sole owner does not alone justify piercing the corporate veil." *Williams v. McAllister Bros., Inc.*, 534 F.2d 19, 21 (2d Cir. 1976). Plaintiff has failed to set forth any facts

---

[3]At this juncture is not necessary to consider Plaintiff's argument, which relies upon materials outside the amended complaint, that to the extent Scobbo used a corporate entity that does not exist, he acted without a corporate shield.

suggesting that any of the corporate defendants were a "mere instrumentality of the owner," i.e. of Scobbo. The amended complaint simply alleges that Scobbo perpetrated fraud and intentional misrepresentation by means of inaccurate insurance certificates. (AC ¶¶65-70.) Thus, to the extent the claims asserted against Scobbo seek to impose liability on him on a piercing the corporate veil theory, they are dismissed.

## V.     Specification as to Each Defendant

According to Defendants, the amended complaint fails to comply with Rule 8(a) in that it does not clearly indicate the defendants against whom relief is sought and the basis for that relief.

The amended complaint is not a model of clarity - far from it. As noted earlier, it uses terms like "Scobbo," "defendant Scobbo," "the Scobbo defendants" and "defendants" without defining them and seemingly interchangeably. Nonetheless, a fair reading of the complaint is that Gladsky and Scobbo (alternatively, as an individual or on behalf of one or more of the corporate defendants) entered into a charter for the Barge; that Scobbo either on behalf of himself or acting for one or more of the other defendants had control of the Barge during the relevant period and returned it in a damaged condition to the Plaintiff. Each of the causes of action are asserted against all defendants. The pleading is sufficient to withstand the Rule 8 challenge.

## VI.     Duplicativeness of the Claims

Defendants seek dismissal of the causes of action set forth in Count II through V as duplicative of the breach of contract claim in Count I. Duplicative claims are those that arise from the same facts and allege the same damages. *Myers Indus. v. Schoeller Arca Sys., Inc.*, 171 F. Supp.3d 107, 122 (S.D.N.Y. 2016). Generally, duplicative claims should be dismissed when they are based on identical conduct and seek the same relief. *Sands Harb. Marina Corp. v. Wells*

9

*Fargo Ins. Servs. of Or., Inc.*, 156 F. Supp. 3d 348, 362 (E.D.N.Y. 2016).

The Court will address each of the causes of action asserted separately.

### A. Breach of Maritime Bailment (Count II)

Maritime law, as does common law, requires that a bailee exercise due care in the keeping of the goods that have been entrusted to him. *Riverway Co. v. Trumbull River Services, Inc.*, 674 F.2d 1146, 1150 (7th Cir. 1982); *Solano v. Beilby*, 761 F.2d 1369, 1373 (9th Cir. 1985). Here, Plaintiff alleges, alternatively from Count I, that defendants were bailees for hire of the Barge from July 2013 to October 2015 and returned the Barge in a damaged condition as a result of the May incident described above.

Existence of a valid express agreement governing a particular subject matter normally precludes recovery in quasi contract for events arising out of the same subject matter. *Blanchard v Blanchard*, 201 NY 134, 138; *see also*, 66 Am. Jur. 2d, Restitution and Implied Contracts, § 6, at 949). Quasi contract applies in the absence of an express agreement, and it is not really a contract, but a legal obligation imposed by the court in order to prevent a party's unjust enrichment. *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190, 193 (1987). A bailment claim is a quasi-contract claim. It is only when there is no dispute as to whether a valid contract existed governing the subject matter that the quasi-contract claim should be dismissed as duplicative. *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 1987). Given that is its unclear as to which defendant may have entered into the alleged agreement and that the defendant who entered into the alleged contract may be different from the defendant who had control of the Barge when it was damaged, it would be premature to dismiss the bailment claim at this time. Of

course, to the extent that Plaintiff prevails on the breach of contract claim he may not receive a double recovery for a breach of the bailment.

The motion to dismiss the bailment claim is denied.

### B.     Unjust Enrichment (Count III)

When no express or implied agreement governs the parties' interaction, a plaintiff may recover in quasi-contract against a defendant who received a benefit from the plaintiff under circumstances that, in justice, preclude him from denying an obligation to pay for them. *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 55 (2d Cir. 1997). "Unjust enrichment is a quasi-contract claim, and the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Good Luck Prod. Co., Ltd. v. Crystal Cove Seafood Corp.*, 60 F. Supp. 3d 365, 375 (E.D.N.Y. 2014) (internal quotation marks and citation omitted). Where, as here, there is a dispute whether a valid and enforceable contract exists between the parties, the unjust enrichment claim should not be dismissed. *See Feingold v. Chrismas*, 818 F. Supp. 2d 763, 769 (S.D.N.Y. 2011); *see also Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 426 (S.D.N.Y. 2012). Thus, the motion to dismiss this claim is denied.

### C.     Breach of Obligation to Provide Insurance

Plaintiff's claim that Defendants breached the obligation to provide hull and machinery insurance is based on the same facts alleged in support of the breach of an oral maritime contract. Both arise out of Defendants' failure to perform a term of the alleged contract, to wit, the obligation to obtain insurance.  Accordingly, the claim for breach of obligation to provide hull and machinery insurance claim is dismissed as duplicative.

### D.     Fraud and Intentional Misrepresentation

"General allegations that a defendant entered into a contract while lacking the intent to perform it are insufficient to support" a fraud claim. *N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318 (1995). Rather, "plaintiff must allege a misrepresentation or material omission by defendant, on which it relied, that induced plaintiff to" enter the contract. *Id*. at 318; *see Deerfield Commc'ns. Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954 (1986); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) ("To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.") (internal citations omitted). Where the complaint does not allege any specific collateral promises or omissions of material fact that were relied upon in entering the contract, "it alleges nothing more than a breach of the contract," and the fraud claim must be dismissed. *N.Y. Univ.*, 87 N.Y.2d at 318.

Plaintiff's fraud claim rests entirely on the allegations that defendants did not intend to comply with the alleged requirement of the contract to maintain insurance on the Barge. However, there are no allegations that the first certificate of insurance was invalid. That Defendants may have failed to maintain insurance on the Barge throughout the term of the charter does not support a claim for fraud. Accordingly, that claim is dismissed.

### CONCLUSION

For the reasons indicated, the motion to dismiss is granted (1) as to the claims for breach

of obligation to provide insurance and for fraud and (2) to the extent Plaintiff seeks to hold Scobbo liable by piercing the corporate veil, but is otherwise denied.

**SO ORDERED.**

Dated: August 29, 2017
      Central Islip, New York         <u> s/  Denis R. Hurley  </u>
                                                            Denis R. Hurley
                                                            United States District Judge